UNITED STATES of America,
Plaintiff-Appellee,

v.

Loran Anthony BISWELL,
Defendant-Appellant.

No. 81–2341.

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1983.

William L. Lutz, U.S. Atty., and Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

David L. Norvell, Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Biswell appeals a jury conviction on Count I of a two count indictment charging him with two offenses of unauthorized use, acquisition and possession of food stamps of a value of $100 or more, respectively on or about June 17 and July 23, 1981, in violation of 7 U.S.C. § 2024(b) (Supp.1981). The jury acquitted Biswell on Count II. This appeal presents only two issues. First, Biswell argues that outrageous governmental conduct during the investigation violated due process principles and bars his prosecution. Second, Biswell contends the district court erroneously admitted evidence of other alleged crimes, wrongs, or acts by him in violation of Rules 403, 404(b) and 609(a)(1), Federal Rules of Evidence. We are not persuaded by the first proposition but are convinced that the challenged evidence was erroneously admitted and prejudicial and that a new trial must be afforded the defendant.

I

The issues require some review of the evidence, which we will now summarize in part.

Special Agent Russell Barrett, of the United States Department of Agriculture (USDA), and Agent Louis Lara, of the Roswell, New Mexico police department, "targeted" several businessmen in Hobbs, New Mexico during the course of an undercover food stamp investigation in the summer of 1981. Biswell, who owns a pawnshop and used car lot in Hobbs, became a target of

the investigation. On June 17, 1981, the two agents visited Biswell's pawnshop. According to the agents' testimony, Biswell sold the agents a car in exchange for $200 cash and $850 worth of food stamps. This evidence premised the charge in Count I of the indictment. A similar transaction was said to have occurred on July 23, 1981. It was charged in Count II on which defendant was acquitted.

At the outset of the trial Biswell moved to dismiss the indictment based on a due process defense stemming from the agents' conduct,[1] arguing that the defense should be decided by the court before trial, outside the presence of the jury. II R. 4–5. The prosecution responded to the motion by contending, inter alia, that "the Court ought to order this matter to go to trial and if matters are raised that are directed toward the discretion of the Court with respect to the conduct of the government, then the jury should be excused, the Court could hear it and proceed from there." Id. at 7. The district court overruled Biswell's motion.

Biswell was permitted to make an offer of proof which counsel believed would show that: (1) federal agents compiled the target list after consultations with local law enforcement agencies; (2) targeting of a particular individual required approval from USDA supervisors; (3) Hobbs police officials named Biswell as a target without any known prior involvement in food stamp violations; (4) the USDA did not consider or approve Biswell's targeted status; (5) federal agents lacked a basis for Biswell's targeting, and; (6) "the agents involved in this transaction ... took it upon themselves, without any supervisory approval or authority, to simply walk the streets of Hobbs and pick and choose [targets] at the front door of these particular businesses...." Id. at 8–10. These actions, Biswell argued,

---

1. As used herein, the due process defense means governmental conduct that is so fundamentally unfair and "so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642, 36 L.Ed.2d 366; *Hampton v. United States,* 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (Powell, J., concurring); *id.* at 497, 96 S.Ct. at 1653 (Brennan, J., dissenting).

were outrageous and amounted to a deprivation of due process.

In the trial before the jury the prosecution's first witness, Agent Barrett, testified about the purchase of the two automobiles with cash and food stamps. The first sale occurred, Barrett stated, on June 17, 1981, after inspection of the vehicle when he and Agent Lara told Biswell they would like the car but that they did not have the purchase price. Barrett said he told Biswell that they had only $200 cash and $1,700 worth of food stamps.

According to Barrett, Biswell replied that one must be careful in handling food stamps. *Id.* at 56. Barrett said that after a couple of seconds of reflection Biswell offered to sell the car for the $200 cash and $850 in food stamps at their face value. Barrett then related that the transaction was consummated by Biswell counting the food stamps and signing the automobile's title in the name of "L.M. Reyna" as seller. Biswell instructed the agents to have the title notarized nearby, Barrett said. Other prosecution testimony indicated that the negotiating process consumed six minutes. *Id.* at 159 (testimony of Officer Bogle), 180 (testimony of Officer Scott).

The prosecution's testimony concerning the transaction alleged to have occurred on or about July 23 was similar to its evidence concerning Count I. Barrett said that Biswell agreed to the sale of a vehicle for $160 cash and $600 in food stamps. Barrett also testified that, on this occasion, Biswell asked if the food stamps, even though "hot," were like the last ones in that Biswell could get rid of them without problems. *Id.* at 73.

The evidence produced by the defense tended to show that Biswell refused to take any food stamps and accepted only cash for the transaction charged in Count I, as Olga Fedrick and Helen Biswell testified. Ms. Fedrick said that defendant kept telling the agents he didn't "mess with food stamps." III R. 249. Defense witness Isa Bryant testified that the defendant rejected the

stamps in emphatic terms and said he wanted his money during the June incident. II R. 221. The defense witnesses said the agents were "really persistent" in repeatedly trying to purchase the automobile with food stamps and that the agents left the food stamps on Biswell's counter after purchasing the car for cash. Ms. Fedrick testified that the agents did not give defendant any stamps in the July visit. III R. at 252–53.

A notary testified that Biswell said he had authorization to sign for L.M. Reyna as seller and that Biswell had appeared with the food stamps at the notary's office just after the agents left and gave them to the notary to keep in case the agents returned. The food stamps left by the agents were kept in the notary's file cabinet until the trial and were produced by the notary at trial. Agent Barrett admitted that these were the same food stamps used by the agents during the June 17 transaction and that none of the stamps used in the Biswell investigation had been redeemed for cash or credit.

We will cite other evidence as it becomes relevant in treating the issues before us.

## II

Biswell contends that "government agents engaged in such outrageous and egregious conduct as to deny the defendant the fundamental fairness required by the due process of law guaranteed him under the Fifth Amendment of the United States Constitution." Appellant's Brief in Chief at 10. Biswell raised this argument at appropriate times before, during and after the presentation of evidence, and the district court rejected the defense on each occasion. We hold that the court did not err in so ruling.

The Supreme Court has stated that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the

government from invoking judicial processes to obtain a conviction...." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642, 36 L.Ed.2d 366. *See also Hampton v. United States,* 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (Powell, J., concurring); *id.* at 497, 96 S.Ct. at 1653 (Brennan, J., dissenting). We have considered such a due process defense based on a claim of outrageous governmental conduct several times. *E.g., United States v. Spitz,* 678 F.2d 878 (10th Cir.); *United States v. Simko,* 662 F.2d 656 (10th Cir.), *cert. denied,* 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453; *United States v. Gentry,* 642 F.2d 385 (10th Cir.); *United States v. Szycher,* 585 F.2d 443 (10th Cir.); *United States v. Spivey,* 508 F.2d 146 (10th Cir.), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104. In the *Szycher* case we held that this issue is one for the court to decide, 585 F.2d at 445, and noted that a majority of the Supreme Court continues to recognize the possibility of a bar to prosecution under due process principles in circumstances of sufficiently offensive conduct by law enforcement authorities. *Id.* at 447.

■ Here Biswell relies mainly on *United States v. Twigg,* 588 F.2d 373 (3d Cir.); *United States v. Batres-Santolino,* 521 F.Supp. 744 (N.D.Cal.); and *United States v. Jannotti,* 501 F.Supp. 1182 (E.D.Pa.), in support of his contention that due process principles prohibit his conviction. Even considering the record in the most favorable light for him, including his offer of proof, II R. 8–10, and all the evidence such as testimony that the agents were "really persistent," we are convinced the conduct was not so outrageous as to bar this prosecution. *See United States v. Monaco,* 700 F.2d 577, 580 (10th Cir.1983).[2]

The cases do not persuade us that the due process defense was established. For ex-

ample, in *Twigg,* the Third Circuit reversed all but one of defendants' convictions based on the overinvolvement of government agents in an illegal drug manufacturing operation. The federal agents, through an informant, suggested the creation of a laboratory to produce methamphetamine. The agents supplied a farmhouse for the laboratory, about 20% of the laboratory glassware, and an essential ingredient required in the manufacturing process. 588 F.2d at 375. The government's informant "was completely in charge of the entire laboratory," *id.* at 376, and the assistance given by defendants was minimal. *Id.* at 381. About five months after the initial government involvement, two participants in the manufacturing scheme were arrested.

We feel that the government conduct on which Biswell bases his defense is palpably distinct from that evident in *Twigg.* The initial contact between Biswell and Agents Barrett and Lara occurred on June 17, the same day the Count I transaction was completed. Any absence of a reasonable basis for initiation of the undercover investigation does not bar the prosecution, *cf. United States v. Swets,* 563 F.2d 989, 991 (10th Cir.), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 and we have held that government agents may employ appropriate artifice and deception in their investigation. *United States v. Szycher, supra,* 585 F.2d at 449, *citing, United States v. Gurule,* 522 F.2d 20, 23 (10th Cir.), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800. We are not persuaded to hold that the testimony of the agents' persistence or any evidence established threats or intimidation exceeding permissible bounds. *See Szycher, supra,* 585 F.2d at 449.

In sum, we are satisfied that no due process violation was established.

### III

Biswell strenuously contends that the trial court erred in admitting testimony of his

---

**2.** To summarize, Biswell's evidence tending to show outrageous governmental conduct consisted of: (1) a lack of approval from USDA superiors for Biswell's targeting; (2) a lack of foundation for Biswell's targeting; (3) the agents' initial mention of food stamps, and; (4) the agents' persistence in wanting to utilize food stamps as part of the bargain and leaving the stamps at the pawn shop, without any agreement or suggestion by Biswell to do so, and over his objections.

alleged earlier wrongs and crimes and of a prior conviction for receiving stolen property. He points out that he did not put his character in issue so as to allow such evidence to be admissible under Rule 609, F.R.E. He argues that such evidence of other crimes, wrongs or acts was not admissible to prove his character and did not come within any purpose permissible under Rule 404(b), F.R.E.; that even if relevant, the value of such evidence was substantially outweighed by the danger of unfair prejudice, citing Rule 403; and that the prejudice of all such evidence requires a new trial.

The Government's argument below, and on appeal, is that defendant Biswell invited such testimony when he cross-examined Officer Lara about the decision to target him. It says that by this questioning defendant was "suggesting that something was irregular and unfair about Biswell's being approached, while at the same time barring the prosecutors from responding to the suggestion with proof." Brief of Appellee at 8–9. The type of evidence interjected and the way it was developed by the Government are of paramount importance. We therefore will review it briefly, together with the rulings of the trial court.

## A

Agent Lara testified as the second witness for the prosecution. He corroborated Agent Barrett's testimony, outlined earlier, about the first contact with defendant on June 17 and the purchase of the car, which the agents said was accomplished by payment of $200 and $850 in food stamps. On cross-examination, Biswell's counsel asked Lara about the targeting of Biswell. Lara said that Biswell's name had come from Sgt. Bogle and Sgt. Scott, two Hobbs police officers, and that in effect they made the decision to target Biswell. II R. at 147–48.

On redirect the prosecution asked Lara whether he and Barrett had come to Biswell's pawn shop because of this information from Bogle and Scott, which was con-firmed. The prosecution then asked what had been said about Biswell by Officers Bogle and Scott, and defense counsel objected. The court momentarily sustained the objection. Out of the hearing of the jury the prosecution then argued that Biswell had raised the issue of targeting; counsel contended that the agents had not just gone out to Biswell's shop without any justification, but because he was "a fence and malcontent." II R. at 150. The prosecuting attorney stated that Bogle and Scott would testify so that a hearsay objection was not valid.

In developing such evidence against defendant, the Government called Sgt. Bogle. He confirmed that Biswell's name came up during a meeting with Agents Barrett and Lara concerning food stamp investigations. The prosecuting attorney asked what information Bogle had conveyed to Barrett and Lara about defendant Biswell. Biswell's counsel objected, and out of hearing of the jury argued that the evidence of misconduct was irrelevant, violative of Rule 404(b), F.R.E., and prejudicial. He asked that the jury be excused "for the purpose of receiving the offer that the Government makes in this regard." II R. 155. The court overruled the objection and gave Biswell a continuing objection to the receipt of such evidence. *Id.*

Bogle then testified that he told the meeting about "*past activities* that I was aware of that Mr. Biswell was involved in, *and ongoing investigations* that we were conducting at that time." Biswell's past activities were described by Bogle as "[g]ambling, stolen property, things like that." II R. 156; (emphasis added). Bogle also testified that Barrett

> told me that he did not want to contact regular citizens, businessmen in the community, unless we had prior information that there was either criminal activity that had directly involved them, or *we had information that they were involved in some kind of criminal activity. They weren't there to contact just citizens, un-*

*less we had prior information of some sort that they were involved in criminal activity.*

*Id.* at 156; (emphasis added).

Sergeant Scott, called by the prosecution, stated during defense cross-examination that she gave the federal agents no information that Biswell had been involved in any food stamp violations. *Id.* at 183. On redirect, Scott testified that she did tell Agent Barrett that "we have removed stolen property from his business before, and he's been handled for the same thing before." *Id.* at 188. Officer Scott was then asked if she knew of any times when the defendant had been "convicted of such things" and replied "I believe his record . . ." before defense counsel promptly objected. At the sidebar a motion for a mistrial was made on the basis of no foundation, irrelevancy and prejudice. *Id.* at 188–89. The motion was not expressly ruled on and no remedial action was taken. When the questioning continued, Scott was asked if she was aware "whether Mr. Biswell has been convicted for offenses relating to receiving stolen property and offenses relating to that sort of activity" and she responded affirmatively. *Id.* at 191. She was asked whether during the seven years she had been a certified officer she had occasion to "visit Mr. Biswell in connection with the investigation of crimes relating to stolen property;" she replied, "Yes." *Id.*[3]

Thus, at different times repeated references were made connecting Biswell with "ongoing investigations," with being "handled" for possessing stolen property, with "[g]ambling, stolen property, things like that . . . ," and he was by implication placed in a group "involved in some kind of criminal activity."

### B

We are convinced that the overall effect of such evidence was to create a prejudicial portrayal of the defendant as a person of a criminal character with a trait of taking part in general criminal activities for an undefined period. For reasons that follow we must hold that admission of such vague and prejudicial evidence was not justified under Rule 404(b), but was in violation of Rule 404(a) by attempting to show that defendant acted in conformity with a criminal character. In any event, the relevance of any part of such evidence was substantially outweighed by the danger of unfair prejudice when such a vague portrayal of a long-term criminal character was injected, and should have been excluded under Rule 403.

■ First, we note that the Government's justification for the evidence was that the defense had raised a targeting question and that the Government was entitled to introduce other crimes evidence to respond. II R. at 150; see also Brief of Appellee at 7–10. The Government position is untenable for several reasons. In the first place, the questioning of the prosecution witnesses by defense counsel did not delve into the reasons or justification for the "targeting" of defendant and others. Defense counsel inquired about the procedures for approval by superiors within the Department of Agriculture for the targeting of an individual for investigation. The trial judge did not cite this justification for admission of the evidence and we feel it did not exist in the record sufficiently to open the door to the evidence injected by the Government concerning defendant's prior conduct.

Moreover, the argument for admission of the evidence before the jury was illogical. The due process defense touching on the "targeting" would have justified only the admission of the evidence before the trial

---

**3.** After the prosecution's case-in-chief Biswell moved for a directed verdict of acquittal based on the Government's failure to prove the elements of the offense, the due process defense of outrageous governmental conduct, and entrapment as a matter of law. The motion was denied. II R. 211–15. The motion was renewed, except as to entrapment as a matter of law, after the defense presentation, III R. 363–64, and after the prosecution's rebuttal witness, III R. 366–68.

judge, and not the jury. We have held for some time that the due process defense of this sort is for the court to decide. *United States v. Szycher, supra,* 585 F.2d at 445 (1978). The Government's remedy, if the defense was improperly developing evidence before the jury, was to object and have the proof properly confined, and not to prejudice the jury trial with extrinsic evidence relevant only on the non-jury issue. *Cf. United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974). Thus the Government did not have the justification it urged for introduction of the other crimes and wrongs evidence before the jury and it should have been excluded as irrelevant when that contention was made.

Second, the trial court referred however to another basis for admission of the evidence. The judge touched on this when discussing the instructions after the close of the evidence, stating that he was adding a cautionary instruction dealing with the "404 testimony". III R. at 374. He was obviously viewing the evidence as admissible under Rule 404(b) in the form of proof of other crimes, wrongs, or acts to prove motive, opportunity, intent, or the like.[4] The Government also now alternatively argues that the admission of the evidence was proper under Rule 404(b). Brief of Appellee at 11–12. Of course, Rule 404(b) first provides that evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." It does permit the admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

■ At the outset of our consideration of Rule 404(b) we feel it most important to note that the Government did not suggest an issue at trial on which the evidence of other crimes or misconduct was relevant and admissible under the Rule. Moreover the trial court did not identify any such issue, other than perhaps by his allusion, after the close of the evidence, to the cautionary instruction he would give referring to "motives, intent, knowledge or absence of mistake or accident ..." *See* note 4 *supra.* Such purpose should have been clearly identified and a broad statement invoking the Rule does not suffice. The burden is on the Government which "... must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir.1982).[5] There must be a clear

---

**4.** There was no cautionary instruction given by the trial judge at the time of the admission of the evidence. He did give an instruction in the general charge as follows: (I R. 56):

> Testimony has been presented of other acts, wrongs or crimes committed by the defendant at earlier times. This testimony was not offered to show that the defendant committed the offense with which he is charged here and you cannot consider it at all for that purpose. You can consider it only for the purpose of showing the defendant's motives, intent, knowledge or absence of mistake or accident in this case. You can reject it entirely and not consider it at all if you see fit.

**5.** As noted, the Government did not rely on Rule 404(b) at trial for admission of the evidence and argued instead that the defendant had opened the door for proof of other crimes

or misconduct by inquiring into the "targeting" matter. The importance of identifying the issue justifying admission of the evidence, which consisted here of a general reference to Rule 404(b), is emphasized by a noted commentator:

> [S]ome aid to fairness is afforded by analyzing each proffer of other crime proof to determine what evidential hypotheses the jury is expected to use, and weighing the probative force of the line of proof against the need of the prosecutor and the risks specified in Rule 403. The more reason there is in the decision to admit or exclude, the more apt it is to be fair. *Both bench and bar benefit at a trial if critical questions of admissibility are exposed and reasons clearly stated.*
>
> \* \* \* \* \* \*
>
> The legislative history of Rule 404 suggests that the policy of protecting the accused should be embraced in good faith by prosecutor and judge. Accordingly, the onus of

and logical connection between the alleged earlier offense or misconduct and the case being tried. *United States v. Thomas,* 632 F.2d 837, 844 (10th Cir.1980), *cert. denied,* 449 U.S. 960, 101 S.Ct. 373, 66 L.Ed.2d 227; *United States v. Burkhart,* 458 F.2d 201, 206 (10th Cir.1972).

We are mindful that Agent Barrett testified that during the July transaction defendant said he knew the stamps were "hot" and wanted to know, however, if they were "like the last ones, that he can get rid of here in New Mexico with no problem?" II R. at 73. The agent also testified that he told the defendant that if they were checked, investigation would confirm that the stamps had been issued but they were "really hot." *Id.* The defendant did deny that he agreed to accept the stamps. Thus the evidence of dealing in stolen goods might be of relevance on the issue of intent, if it properly meets the requirements of involving the same state of mind in the perpetration of both the extrinsic and the charged offense, and if it was not too remote or substantially outweighed in value by its prejudicial effect. *See United States v. Terebecki,* 692 F.2d 1345, 1348–49 (11th Cir.1982); Rule 403, F.R.E.

From the totality of the evidence interjected by the Government we are convinced that the admission of the evidence of other crimes, wrongs and misconduct here was prejudicial error. First, we are not dealing with proof clearly establishing an identified, reasonably recent offense of receiving stolen goods, or with any reasonably recent conviction of such an offense. As noted, the evidence was of the most damning sort—referring to "ongoing investigations," persons "involved in criminal activity" and a general smear of the defendant for participating in "[g]ambling, stolen property, things like that." II R. 156.[6] *United States v. Escobar,* 674 F.2d 469, 475 (5th Cir.1982). The Government's approach did not permit any effort by the defendant to meet charges of specific misconduct at any particular time; it could be met only by a general denial and evidence of good character. Moreover the vagueness of the testimony made its reliability questionable and diminished its probative value. *United States v. Melia,* 691 F.2d 672, 677 (4th Cir.1982).[7] As noted, Officer Scott was permitted to testify that Biswell had been "handled" on unspecified occasions for possessing stolen property at his pawn shop—testimony vague enough to relate to charges never proven.

■ The Government's evidence here was more in the nature of character evidence interjected to prove that defendant acted in conformity with his character on these particular occasions—a procedure clearly proscribed by Rule 404(a), F.R.E. The evidence proved far too much and lapped over into a smear on gambling and general crim-

---

showing that prejudice is over-balanced by need and good faith should rest on the Government. This may call for prosecutorial restraint. In *United States v. Williams,* [596 F.2d 44, 51 (2d Cir.1979), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317], the Second Circuit expressed concern "over the government's readiness to jeopardize a conviction by use of other crimes evidence when the question of admissibility, as here, is a close one."
2 *Weinstein's Evidence,* 404–45–46, 404–112 (1981). (Footnotes omitted; emphasis added).

**6.** Commercial gambling, which includes "receiving, recording or forwarding bets or offers to bet," or possessing facilities with the intent to do the foregoing, is a felony in New Mexico. N.M.S.A. § 30–19–3 (1982). The placing of a bet is a misdemeanor. *Id.* at § 30–19–2. Con-

ducting, financing, managing, supervising, directing or owning all or part of an illegal gambling business is a federal felony. 18 U.S.C. § 1955. An illegal gambling business is defined as a gambling business, in violation of state law, which involves five or more persons and remains in operation for more than 30 days or has a gross revenue in excess of $2,000 in any single day. *Id.*

**7.** The trial courts "have a duty to excise evidence of other uncharged wrongs if they can do so without destroying the relevancy of the evidence that addresses itself to the charges." *United States v. Lucero,* 601 F.2d 1147, 1149 (10th Cir.1979); *United States v. Mangiameli,* 668 F.2d 1172, 1176 (10th Cir.1982).

inal activity, which destroyed the justification of relevance on a particular issue of intent. *See United States v. Burkhart,* 458 F.2d 201, 204–05 (10th Cir.) (en banc). We have rejected similar arguments for admission of earlier Dyer Act offenses, stating that "although such evidence may have at least some relevance to the offense being tried, its predominant quality is to show the defendant's character as a car thief or a bad check artist, for example". *United States v. Burkhart, supra,* 458 F.2d at 204; *see also United States v. Gilliland,* 586 F.2d 1384 (10th Cir.1978); *Morgan v. United States,* 355 F.2d 43, 45 (10th Cir.1976).

■ While the trial judge did not discuss Rule 403, F.R.E., we feel that it is of compelling importance in these circumstances. Even if some isolated portions of the evidence on dealing in stolen goods had been specific and sufficient for the jury to find that the defendant committed the extrinsic offense,[8] *United States v. Terebecki,* 692 F.2d 1345, 1349 (11th Cir.1982), here due to the vague and odious proof offered, "its probative value [was] substantially outweighed by the danger of unfair prejudice...." Rule 403 F.R.E.; *United States v. Escobar,* 674 F.2d 469, 475 (5th Cir.1982); *United States v. Westbo,* 576 F.2d 285, 291–92 (10th Cir.1978).

The Government relies on *United States v. Tisdale,* 647 F.2d 91 (10th Cir.1981), *cert. denied,* 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed.2d 86. There a tape recorded conversation containing defendant's reference to a marijuana transaction was admitted at the defendant's trial on charges of interstate transportation of stolen property. We upheld the admission of the extrinsic evidence, but it was admitted in an entirely different context. The misconduct recounted in *Tisdale* was all revealed in a single tape recording of a single meeting, which was part of the criminal transaction charged. Here the extrinsic evidence is not tied in to the instant transaction and actually was so vague as to be related to no identifiable prior wrongful conduct. We cannot agree that the *Tisdale* decision supports the Government's approach here in any respect.

IV

On careful consideration of the record here we are convinced that the evidence of other crimes and misconduct as interjected was not justified under Rule 404(b). In any event we must hold that any probative value it had was also substantially outweighed by the danger of unfair prejudice so that its admission was an abuse of discretion under Rule 403. Moreover, "[i]mproper admission of evidence of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself." *United States v. Parker,* 604 F.2d 1327, 1329 (10th Cir.1978); *see also, United States v. Gilliland,* 586 F.2d 1384, 1391 (10th Cir.1978).

Accordingly, the judgment is reversed and the case is remanded for a new trial.

BARRETT, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II of the majority opinion relating to the issue of outrageous and egregious conduct, but I must respectfully dissent from Part III which holds that the trial court erred in admitting evidence of prior crimes and/or bad acts committed by Biswell pursuant to Fed.R.Evid. 404(b), 28 U.S.C.A. Thus, I would affirm the judgment.

I agree with the majority that the government's justification for admission of the challenged testimony is without merit. Even so, the fact is that the trial judge *did not* accept the government's justification and, instead, admitted the evidence on an entirely different ground, *i.e.,* rule 404(b).

---

8. We note that although the trial judge expressed a clear preference for an actual record of the convictions referred to by the Govern-

ment, it was not produced in the record. II R. 190–91.

Thus the sole and exclusive inquiry on appeal should be whether the trial court erred, and not whether the government's contentions on appeal are "untenable". The trial court at no time indicated or ruled that the evidence was admissible under rule 404(a). Defense counsel was fully aware of the court's basis.

The thrust of the government's arguments below, and on appeal, is that Biswell invited testimony concerning his character when he questioned Officer Lara about the decision to target him. The government contends that by this questioning Biswell was "suggesting that something was irregular and unfair about Biswell's being approached, while at the same time barring the prosecutors from responding to the suggestion with proof." Appellee brief at 8–9. This proof, the government suggests, was evidence of Biswell's prior misconduct.

I agree with the majority that a few questions by Biswell trying to elicit the name of the person or persons who suggested him as a target did not "open the door" to evidence of his character. During his questioning of Lara, Biswell did not inquire about the method used to select people; he merely elicited the names of Sergeants Bogle and Scott as the persons who had suggested him as a target. Thus, Biswell did not thereby place his character in evidence. See Fed.R.Evid. 404(a)(1).

As I have previously observed, it is highly significant that the trial court *did not* admit the challenged evidence on the basis that Biswell had "opened the door" regarding his character. See R., Vol. I p. 56. Before any of the officers testified as to prior bad acts by Biswell, Biswell's counsel objected to that testimony on grounds of prejudice and he specifically alerted the court to rule 404(b). R., Vol. II p. 155.

This court has often held that evidence of other crimes, wrongs, or acts, while not admissible to show the criminal disposition of the defendant, is admissible under rule 404(b) for other purposes, such as proof of intent, motive, opportunity, plan, identity, knowledge, or absence of mistake or accident. *United States v. Jacobson,* 578 F.2d 863 (10th Cir.), *cert. denied,* 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978); *United States v. Gano,* 560 F.2d 990 (10th Cir.1977); *United States v. Nolan,* 551 F.2d 266, 270, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), and cases cited therein. Indeed, in *Nolan* we noted the breadth of rule 404(b) and stated, "[i]t would allow the admission of uncharged illegal acts unless the only purpose for their admission is to prove the criminal disposition of the defendant." 551 F.2d at 271. *Accord, United States v. Tisdale,* 647 F.2d 91 (10th Cir.1981), *cert. denied,* 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed.2d 86 (1981).

Biswell's defense to Count I of the indictment was that no food stamps changed hands; Biswell's witnesses testified that Agent Barrett left them on the counter after he (Biswell) said he didn't want them. R., Vol. II pp. 221, 223; R., Vol. III pp. 249–50, 318, 320, 330. In other words, Biswell's defense claim was one of innocent involvement in the transaction. Under these circumstances, evidence of Biswell's prior misconduct was admissible under rule 404(b). Biswell was charged with unauthorized possession of food stamps, to wit: accepting stolen food stamps as part of the purchase price of an automobile. Evidence that Biswell had previously been involved in receipt of stolen property and related activities is sufficiently probative evidence of his knowledge, or absence of mistake or accident, with respect to his unauthorized receipt of food stamps. *See United States v. Tisdale, supra; United States v. Merryman,* 630 F.2d 780 (10th Cir.1980).

The admission of 404(b) evidence "is a matter within the trial court's discretion and requires a balancing of the probative value against the prejudicial effect." *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir.1978); *see United States v. Lucero,* 601 F.2d 1147 (10th Cir.1979), and *United States v. Nolan, supra.* "In the exercise of this discretion, the court must determine

whether the probative value of evidence is substantially outweighed by the danger of prejudice. Rule 403, Fed.R.Evid." *United States v. Smith,* 629 F.2d 650 (10th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980); *see United States v. Parker,* 604 F.2d 1327 (10th Cir.1979). In *United States v. Carleo,* 576 F.2d 846, 849–50 (10th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978), we stated:

We recognize, however, that even relevant evidence should be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." While trial courts have discretion in striking the balance between probative value and unfair prejudice, *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), and cases cited, they must be particularly sensitive to the potential prejudice that is always inherent in evidence of an accused's prior uncharged crimes or wrongs. *See United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972) (en banc). Although Rule 403 provides broad umbrella protection from unfair or undue prejudice, the specific provision in Rule 404(a) prohibiting evidence of uncharged crimes to show bad character or tendencies toward criminality not only reflects the special danger of other crimes evidence but should alert trial courts to be particularly careful in admitting such evidence. *See id.* at 204 and n. 3.

We are convinced that the trial court here acted with the sensitivity and caution that considerations of other crimes evidence require. The court called a recess in order carefully to consider the nature and purpose of the proffered evidence outside the presence of the jury before it was introduced. Moreover the jury was instructed immediately prior to the introduction of the testimony that it was "being received for the very limited purpose of shedding what light it may, if any, on the motive and intent of the defendant in the [jury's] consideration of

the charges made against him in this case." Record, vol. 3, at 41. The court also cautioned the prosecution not to go into the details of Dickinson's beating, and the government did not attempt to go beyond the scope of inquiry delineated by the court.

We commend the trial court for the manner in which he handled the offer of proof and introduction of this evidence. We hold the court did not abuse his discretion in determining that the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice." His determination is supported by the explicit provisions of Rule 404(b) which, *inter alia,* allow evidence of other crimes, wrongs, or acts as proof of motive or intent. *See United States v. Nolan,* 551 F.2d at 270, and cases cited.

In the instant case, I am satisfied that the trial court did not abuse its discretion in receiving testimony under rule 404(b). Although the trial court did not call a recess, as in *Carleo, supra,* to consider the evidence before ruling on its admissibility, still the court entertained full arguments relative to admissibility before the bench and out of the hearing of the jury. R., Vol. II pp. 51–52, 155–56, 188–91. This was, in effect, the equivalent of the *Carleo* procedure. The trial court did not admonish the jury as to the evidence's limited purpose at the time it was received; however, Biswell did not request a cautionary instruction. *See United States v. Tisdale, supra.* The trial court did give full cautionary instructions at the close of the trial. *See infra.*

The trial court did not make an express finding under rule 403 that the probative value of the evidence outweighed its prejudicial effect; however, such was implicit in the court's ruling. Defense counsel made express objection on grounds of prejudice, R., Vol. II p. 151, supplemented by further objection specifically anchored to rule 404(b), both before the evidence was admitted. These timely objections were coupled with a continuing objection to the receipt of

such testimony, R., Vol. II p. 155, and defense counsel continued to object on grounds of prejudice to receipt of such testimony. R., Vol. II pp. 188–89. On such a record, I would hold that it is implicit that the trial court made the requisite finding by admitting the testimony in evidence. "It is apparent that under rules 404 and 403 the trial judge had to balance the danger of prejudice against the probative value of the testimony." *United States v. Tisdale, supra* at 92. No prejudice to the defendant has been demonstrated from the trial court's failure to make an express finding.

Biswell emphasizes that the conviction for receiving stolen property was nine years old. R., Vol. II p. 190; Appellant's reply brief at 3. However, a trial judge has discretion to strike the balance between probative value and prejudice when ruling on the admissibility of 404(b) evidence. *United States v. Hunter,* 672 F.2d 815 (10th Cir.1982); *United States v. Lucero, supra; United States v. Bridwell, supra; United States v. Nolan, supra.* The trial court submitted full and complete instructions limiting the use of the challenged testimony at the conclusion of the trial:

> Testimony has been presented of other acts, wrongs or crimes committed by the defendant at earlier times. This testimony was not offered to show that the defendant committed the offense with which he is charged here and you cannot consider it at all for that purpose. You can consider it only for the purpose of showing the defendant's motives, intent, knowledge or absence of mistake or accident in this case. You can reject it entirely and not consider it at all if you see fit.

R., Vol. I p. 56. *See also United States v. Tisdale, supra.* Of course, in a practical sense, receipt of 404(b) evidence would be prejudicial to Biswell in the sense that it is adverse and certainly does indicate that he was not pure, innocent and naive. Here, however, the probative value substantially outweighed any possible prejudice. I would hold that no unfair prejudice accrued to Biswell due to the receipt of the 404(b) testimony.

I deem it significant that the jury acquitted Biswell of the second count of the indictment. This indicates that the jury carefully followed the instructions regarding the 404(b) testimony, and weighted the scale of credibility in favor of Biswell on the charge contained in Count II. Credibility of witnesses is a province exclusively for jury determination, and we will not weigh the credibility of witnesses on appeal. *See United States v. Behrens,* 689 F.2d 154 (10th Cir.1982); *United States v. Watson,* 594 F.2d 1330 (10th Cir.), cert. denied, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Nolan, supra.*

I would hold that the trial court did not abuse its discretion in allowing the testimony of prior convictions and bad acts in evidence, and would affirm.