UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard L. STUMP,
Defendant-Appellant.

No. 82–2784.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1984.

Decided May 25, 1984.

Certiorari Denied Oct. 1, 1984.
See 105 S.Ct. 203.

Suzanne Philbrick, Oak Lawn, Ill., for defendant-appellant.

John J. Thar, Asst. U.S. Atty., Sarah Evans Barker, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before PELL and POSNER, Circuit Judges, and PARSONS, Senior District Judge.[*]

---

* The Honorable James B. Parsons, Senior District Judge for the Northern District of Illinois, Eastern Division, sitting by designation.

PARSONS, Senior District Judge.

On August 11, 1982, Appellant Richard L. Stump, M.D., was found guilty on twenty-five counts of illegally prescribing controlled substances in violation of the Controlled Substances Act.[1] In his appeal he challenges the district court's decision to allow into evidence improper prescriptions that had been issued by him prior to the date of any of the crimes for which he was charged in the indictment. He also claims that considering the circumstances the evidence was insufficient to prove that he knowingly had violated the Act by prescribing the drugs as he did. Finding no merit to either of these claims, we affirm the judgment of conviction on all counts.

## I

Richard L. Stump was a medical doctor licensed by the State of Indiana to practice medicine and in the course of such practice to dispense controlled substances. During the time period covered by the indictment, specifically January of 1981 to June of 1982, he maintained medical offices in both Muncie, Indiana and Redkey, Indiana. Investigation of the doctor began when one Thomas McCoy, a convicted felon, became a confidential informant, working with the Indiana State Police. He related to them that Doctor Stump was prescribing drugs in an unlawful manner. During the investigation that insued, Michael Bolander, a detective with the Indiana State Police, worked with Thomas McCoy. The two of them, equipped with devices which recorded their conversations, succeeded in taping a number of conversations with the doctor while obtaining prescriptions from him. Then as part of the investigation the police collected all of the prescriptions written by the defendant which had been filled by Muncie area pharmacies during 1981. Relying on these documents and the sworn statements of McCoy and Bolander the federal agents were able to obtain search warrants for both of Doctor Stump's offices. The searches produced numerous corroborating records of patients.

Eventually Doctor Stump was charged with thirty counts of illegally prescribing controlled substances.[2] He plead not guilty and was tried by a jury in Indianapolis before Chief Judge S. Hugh Dillin. During the trial and over the defendant's objection, Judge Dillin allowed the jury to consider as evidence a large number of prescriptions which had been written by the defendant during 1981 and 1982 for use by one Kelly Watson. These prescriptions were not themselves included as part of the criminal conduct charged in the indictment. The government's case was substantial. It was based on the documents collected from the Muncie area pharmacies, the patient records from Dr. Stump's office, the testimony of the investigators and the informant, the testimony of various patients of Dr. Stump, the tape recordings that had been made by the investigator and the informant, and testimony of expert witnesses. In substance, the evidence demonstrated that over a period of approximately sixteen months Dr. Stump had provided a shockingly large number of prescriptions for drugs to several people. For some of his patients he had written prescriptions in exchange for extra money, property and personal services, and in most cases he did this after having conducted a meaningless physical examination that consisted of nothing more than weighing the patient. On August 11, 1982, the jury found Richard L. Stump guilty of illegally prescribing controlled substances on twenty-five of the thirty counts of his indictment.[3]

## II

Doctor Stump argues before us that the trial court committed reversible error when it admitted in evidence prescriptions written for use by Kelly Watson which had not been charged as misconduct in the in-

---

**1.** Title 21, United States Code, Section 841(a)(1).

**2.** He was also charged with four counts of violation of the Internal Revenue Code, the disposition of which are not relevant to this appeal.

**3.** He was found not guilty on one count and blank verdicts were returned on the four remaining counts.

dictment. But in this there was no error. While Federal Rule of Evidence 404(b) provides that evidence of prior misconduct is inadmissible to prove the criminal disposition of the defendant, it nevertheless goes on to provide that when the evidence is submitted for certain purposes other than the proof of the prior bad acts, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible. This Circuit under the Rule and before the Rule consistently has permitted evidence of prior misconduct to be admitted when it goes to some element of the offense charged other than the criminal disposition of the defendant. *United States v. Weidman,* 572 F.2d 1199 (7th Cir.1978); *United States v. Grabiec,* 563 F.2d 313 (7th Cir.1977); *United States v. Feinberg,* 535 F.2d 1004 (7th Cir.1976); *United States v. Ostrowsky,* 501 F.2d 318 (7th Cir.1974); *United States v. Pate,* 426 F.2d 1083 (7th Cir.1970); *United States v. Fierson,* 419 F.2d 1020 (7th Cir.1969); *United States v. Marine,* 413 F.2d 214 (7th Cir.1969); *United States v. Accardo,* 298 F.2d 133 (7th Cir.1962); *United States v. Iacullo,* 226 F.2d 788 (7th Cir.1955), *cert. denied,* 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839.

In *United States v. Feinberg, supra* at 1009, this court set out a four part test that serves as a guide to the admissibility of prior acts of misconduct. The evidence is admissible when: 1) It is of a type which fits into one of the exceptions listed in 404(b) and addresses an issue disputed by the defendant; 2) The probative value of it outweighs the possibility of undue prejudice to the defendant; 3) The proof of the prior misconduct is clear and convincing; and 4) The prior acts are both similar enough and close enough in time to be relevant to the offenses that are charged.

Each one of these requirements was fully met in this case. The prior prescriptions were evidence showing intent, opportunity, plan, preparation and lack of mistake. The

defendant himself denied any intent to act unlawfully and thereby placed the issue of his intent before the jury. The probative value of the evidence was very high because it tended to prove that the defendant was engaged in a pattern of continuing unlawful conduct outside of the scope of a legitimate medical practice. The questioned evidence showed that for over a year Dr. Stump was regularly prescribing drugs in exchange for goods and services from Kelly Watson.[4] This is pattern evidence that clearly outweighs any conceivable prejudice to the defendant. The prior bad acts also were proved by clear and convincing evidence. Watson's testimony was strongly corroborated by documents including the prescriptions themselves. The prescriptions written for Kelly Watson, standing beside the offenses set out in the indictment, were inseparably a part of a continuing scheme spanning a single period of time. The trial court correctly permitted this pattern evidence to be considered by the jury.

### III

The appellant before us also argues that the government failed to meet its burden of proving that he knowingly prescribed controlled substances in an unlawful manner. In assessing the sufficiency of evidence, we determine whether after review of "the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We conclude from the record that the government presented ample evidence from which a jury reasonably could have found that Doctor Stump was guilty of the offenses with which he was charged.

Improperly issuing a prescription for a controlled substance is sufficient to warrant a conviction under the Controlled Substances Act even though the doctor does

---

**4.** Watson testified that he traded radios, mond rings, guns and a car to the defendant in exchange for prescriptions for drugs. The evidence also established that during the period the defendant was under investigation he had written approximately 198 improper prescriptions for Kelly Watson in the name of Kelly or K. Watson and an approximately 164 additional prescriptions which Watson received directly under other names.

not himself actually distribute the drugs and even though the prescription is not subsequently filled. The sheer number of prescriptions written to any one of several individuals in this case were themselves substantial evidence that the defendant knew that he was prescribing drugs improperly. He wrote so many prescriptions to the same persons during the short period of time covered by the indictment that the intervals between them could not possibly be consistent with legitimate medical treatment. He prescribed drugs in exchange for excessive money or for goods or services, with no meaningful physical examination beforehand. He wrote prescriptions in fictitious names for people whose correct names he knew. He referred to many drugs by their "street names" and directed his patients to fill their prescriptions only at different pharmacies. Expert evidence testimony was to the effect his conduct was inherently dangerous. Death could have resulted if the drugs were actually ingested by the patients at the dosage amounts being prescribed by Dr. Stump. Evidence of intentional misconduct was overwhelming. The district court properly denied his motion for judgment on the evidence.

Appellant's conviction is AFFIRMED.