UNITED STATES of America, Plaintiff,

v.

Austin L. JAMIESON.

No. 84–10023–01.

United States District Court,
D. Kansas.

March 15, 1985.

---

Benjamin L. Burgess, U.S. Atty., Wichita, Kan., for plaintiff.

Kiehl Rathbun, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The matter is now before the court on the government's motion for reconsideration of a previous ruling granting defendant's motion in limine and excluding certain prescription evidence at trial. The supersedeas indictment, returned on July 25, 1984, charges defendant with 53 counts of knowingly and intentionally prescribing certain controlled substances without a legitimate medical purpose, all in violation of 21 U.S.C. § 841(a)(1). Dk. # 23. Defendant's motion (Dk. # 39) sought to prevent the introduction into evidence, under Federal Rule of Evidence 404(b), of prescriptions other than those involved in the 53 counts of the superseding indictment.

On the morning trial was to commence, and after hearing the testimony of Kathy Christopher and William Becker, the court granted defendant's motion, finding the government's evidentiary foundation for introduction of other prescriptions under Rule 404(b) inadequate. There followed an appeal of that issue, which was dismissed December 19, 1984 on motion of the government. Dk. # 59. On January 2, 1985, the United States filed the motion to reconsider, and further requested the court either reserve a ruling until trial or allow the introduction of additional pretrial evidence. Dk. # 60. Defendant did not object to a rehearing of the motion. Dk. # 62.

In addition to the testimony of Christopher and Becker, the government has elicited the testimony of Thomas Stephenson on January 23, 1985, Dr. Douglas L. Young on February 19, 1985, and Richard Lill, by way of deposition taken March 4, 1985. Forty of the 53 counts of the supersedeas indictment involve specific prescriptions issued to either Christopher, Stephenson or Lill. The general body of extrinsic prescription evidence the government seeks to introduce to aid in proof of these counts is comprised of 52 other prescriptions issued to Christopher, 33 to Stephenson, 67 to Lill, and 14 to Becker.

An issue that has resurfaced throughout these proceedings is whether extrinsic acts, in this case the issuance of specific prescriptions, need be wrongful acts. Rule 404(b) speaks only of "other crimes, wrongs, or acts...." On the one hand, the government has maintained that it need not show that the other acts are necessarily wrongful. It is sufficient, it is argued, that they are similar acts in the sense that they were prescriptions issued by defendant, were close in time to the crime charged, and tend to establish a material issue in the case. On the other hand, the government has attempted to establish the wrongful nature of these acts through testimony of both a general and specific nature.

Defendant responds that there has not yet been an identification, with any precision, of the factual issues to which other prescription evidence is relevant. He further argues that since the offered evidence under 404(b) is identical to the charged counts in that they involve the issuance of prescriptions, they must be wrongful by some measure of proof or they are not relevant. Without proof of wrongfulness,

he argues, the introduction of such evidence is prejudicial without having any evidentiary value.

The question of proof of wrongfulness is important in this case because of the nature of the extrinsic evidence and the purpose for which it is offered. The government's position has been clearly established: "... rather than charge each prescription as a separate criminal act, only a representative number of prescriptions were charged as criminal acts representative of the overall pattern of conduct." Hearing Transcript, p. 7, Dk. # 66. The government is not offering this extrinsic evidence simply to show the defendant wrote other prescriptions than those charged, but rather to show the defendant wrote other prescriptions than those charged without legitimate medical reasons.

■ The appropriate inquiry under Rule 404(b) focuses not on whether an extrinsic act is wrongful, but whether it is relevant for a purpose other than showing bad character and, if so, whether its probative value substantially outweighs the danger of unfair prejudice. *See United States v. Barbieri,* 614 F.2d 715 (10th Cir.1980). The first step of the inquiry is to determine whether the extrinsic offense or act is relevant to an issue in the case other than propensity. The government should be prepared to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Biswell,* 700 F.2d 1310, 1317 (10th Cir.1983). The government must further offer proof that the defendant in fact committed the extrinsic offense or act. Once extrinsic evidence is thereby determined relevant to an issue other than propensity, the court must then weigh the probative value of the evidence against its prejudicial effect. Applying these guidelines to the facts of this case, it becomes apparent to this court that much of the prescription evidence should not be admitted under 404(b). The court, however, has reconsidered its previous ruling, as set forth in the Memorandum filed September 5, 1984 (Dk. 46), and concludes the government has laid an adequate foundation for the introduction of prescriptions issued the witnesses in names other than their own.

## Relevancy to Proper Issues

Under Rule 404(b), evidence of other crimes, wrongs, or acts may be admissible to prove such facts as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." On several occasions where the government has recited issues to which the extrinsic prescription evidence is relevant, the litany has changed. Most recently, during oral argument on March 8, 1985, the consequential facts identified were intent, knowledge, opportunity, plan, lack of mistake and lack of good faith.

■ It is, of course, important to appropriately identify the consequential facts in issue, and how they may be inferred from extrinsic evidence, to determine relevancy of that evidence and, ultimately, to frame appropriate limiting instructions for the jury. "There must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *United States v. Biswell,* 700 F.2d at 1317–18. *See also United States v. Thomas,* 632 F.2d 837, 844 (10th Cir.), *cert. denied* 449 U.S. 960, 101 S.Ct. 373, 66 L.Ed.2d 227 (1980). It is clear from the evidence presented thus far that intent will be a crucial issue in this case. The government must prove that defendant entertained the requisite specific intent; that he knowingly and intentionally dispensed controlled substances for other than legitimate medical purposes and outside the usual course of professional practice. *See United States v. Varma,* 691 F.2d 460, 462 (10th Cir.1982); *United States v. Guerrero,* 650 F.2d 728, 730 (5th Cir.1981). *See also* 21 C.F.R. § 1306.04(a).

■ Evidence of other prescriptions would be of relevance and admissible on the issue of intent, "if it properly meets the requirements of involving the same state of

mind in the perpetration of both the extrinsic and the charged offense, and if it was not too remote or substantially outweighed in value by its prejudicial effect." *United States v. Dysart*, 705 F.2d 1247, 1258 (10th Cir.) *cert. denied*, — U.S. —, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983). *See also United States v. Guerrero, supra* at 733–34, 737.

As previously indicated, the government's tactic has been to charge a representative number of acts of writing prescriptions. "[T]he other prescriptions that are not charged in the indictment blend with and are connected with the ones that are charged ... they help to explain the circumstances of the ones that are charged in the indictment and they tend logically to prove elements in the case." Hearing Transcript, page 133, Dk. # 57. The court agrees the other prescriptions would tend to logically prove elements in the case, such as intent or knowledge, to the extent they in fact constitute similar acts to those charged. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (*en banc*), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The court also agrees that such extrinsic evidence would be relevant to proof of a common plan or scheme involving continuing conduct outside the scope of legitimate practice. *See United States v. Stump*, 735 F.2d 273, 275 (7th Cir.) *cert. denied*, — U.S. —, 105 S.Ct. 203, 83 L.Ed.2d 134 (1984); *United States v. Guerrero, supra* at 737; *United States v. Barbieri*, 614 F.2d at 719. On the other hand, the government has not demonstrated to the court's satisfaction how opportunity is a fact of consequence in this case or, for that matter, how the extrinsic evidence would tend to prove such an element. Similarly, under the circumstances of this case, it is unnecessary to treat lack of mistake or lack of good faith as issues distinct from intent or knowledge. To the extent the extrinsic evidence is determined admissible, it is unnecessary and potentially confusing to subject the jury to a limiting instruction identifying numerous issues which essentially overlap.

## Sufficiency of the Evidence

A second necessary step of the relevancy determination requires proof that the defendant committed the other prescription acts. It is here the court believes the issue of wrongfulness has unnecessarily obscured the question whether an adequate foundation of proof has been laid. Where the government has been most adamant in its contention that proof of wrongfulness is unnecessary is where the proof has been most non-specific or lacking. Since the other prescription acts are in fact deemed by the government wrongful, and part of a wrongful scheme or plan, there should be sufficient proof that they were issued with the same intent or knowledge as the prescriptions charged. *See United States v. Guerrero, supra* at 734. The quantum of proof required of the government is clear and convincing evidence. *See Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 724 (10th Cir.1984); *United States v. Biswell, supra* at 1318; *United States v. Barbieri*, 614 F.2d at 719. *See also United States v. Wormick*, 709 F.2d 454 (7th Cir.1983); *United States v. Evans*, 697 F.2d 240, 249 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983). The government must show by clear and convincing evidence that each one of the extrinsic prescriptions involved the dispensing of controlled substances outside the usual course of professional practice and for other than legitimate medical reasons.

The problem posed by the course the United States has chosen is determining which prescriptions the government has sufficiently proven were issued without a legitimate medical purpose. It would be improper to give the jury all of the prescriptions and let them speculate from general, non-specific testimony that each issued without a valid medical reason. The court would then have to instruct the jury to consider the body of extrinsic prescription evidence as it relates to defendant's intent or knowledge in issuing the charged prescriptions, or as it relates to a common scheme or plan to issue prescriptions out-

side the usual course of practice. There is insufficient evidence to place each of these prescriptions before the jury in this manner.

For instance, in the case of Kathy Christopher, the court in its earlier Memorandum observed: "The government elicited testimony that she was a drug addict and on many, but not all, occasions she feigned a medical problem. On many, but not all, occasions she engaged in sexual activities. Some visits occurred in defendant's office, others did not. On occasion she obtained prescriptions in other names, and the frequency of prescriptions varied over time. Other than as to the events of January 20, 1981, it was impossible for her to correlate her own testimony with the actual prescriptions." Dk. # 46. In focusing on the prescriptions themselves, the problem with this, and other general, non-specific testimony, is we don't know which prescriptions involve misconduct or bad acts. It is clear that in certain instances she received treatment for real as well as feigned problems. The prescriptions themselves simply cannot be sorted out. This is the type of approach which does not permit any effort by defendant to meet charges of specific misconduct at a particular time. *United States v. Biswell,* 700 F.2d at 1318.

■ Upon reconsideration, the court has reached a different conclusion regarding prescriptions written to persons other than the recipients of the drugs. Where, as with Christopher, there is evidence that defendant never treated or examined individuals to whom prescriptions were written, where defendant had every reason to know the substances were actually for Christopher, and where there is evidence defendant suggested that other names be used, the government has borne its burden of proving defendant committed extrinsic acts relevant to the charged offenses. These prescriptions, Government Exhibits 99 through and including 107, constitute evidence of a specific nature and are relevant·to issues raised by the charged prescriptions. *See, e.g., United States v. Stump,* 735 F.2d at 275 n. 4.

■ In the case of William Becker, except for the prescriptions written in his mother's name (Government Exhibits 33 and 36) we confront the same problems of general, non-specific proof. The circumstances of the two alias prescriptions, requesting and receiving prescriptions in his mother's name when she had never been treated or examined by defendant, in order to obtain two prescriptions at the same time, persuade the court that they are relevant extrinsic acts. It is implausible to characterize the prescriptions written in other names as merely constituting effective deception of the defendant.

■ As to the witness Thomas Stephenson, much of the government's proof is again either insufficient, where specific events are concerned, or general and not prescription specific. Stephenson obtained prescriptions from defendant on numerous occasions between January, 1981, and approximately July, 1982. During, and before, that time he was a drug addict. During the initial visit, on January 23, 1981, blood pressure and temperature were taken and Stephenson related to defendant the nature of a specific disk problem diagnosed by a doctor in Kansas City. He also told defendant both percodan and librium had been prescribed for the problem. Stephenson testified that after examining him, defendant prescribed both drugs and indicated he didn't think there were any real back problems. Stephenson had access to a Physician's Desk Reference and had researched literature to concoct a medical excuse for obtaining drugs.

The court does not find this evidence clear and convincing proof that defendant prescribed controlled substances outside the usual course of practice, either on January 23, 1981, or thereafter. The offered extrinsic prescription issued January 23 for librium (Government Exhibit 113) is therefore not relevant. Beyond this date, the evidence is largely non-specific, not correlated to the actual prescriptions, and hence not relevant. There is general testimony as to Stephenson's experiences in defendant's office. On occasion the nurse would

ask questions concerning the reason for his being there. Some visits were for legitimate reasons, and during some visits he feigned a problem. He requested, but did not always receive, the prescriptions he wanted. In addition, many visits occurred at defendant's home or at the Osteopathic Hospital.

Certain of the alias prescriptions are again an exception and are relevant. Stephenson testified that on March 24, 1981, a day after he was prescribed percodan, he again approached defendant and asked for more. He further testified defendant did not appear happy with the situation and indicated he would not be able to use the name used the previous day. Stephenson suggested the name of his younger brother. This prescription (Government Exhibit 124), and the other prescriptions written in his brothers' names, Government Exhibits 136, 139, 148, 152 and 154, are relevant. The government also offers 17 other prescriptions on the sole basis that Stephenson's name is spelled Stevenson. There is nothing in the record to indicate that this is other than a spelling error, and the court does not find these acts satisfactorily proven.

The court reaches the same conclusion with regard to Richard Lill that only prescriptions issued him in other names are clearly proven extrinsic acts committed by defendant. Lill had seen defendant for various health problems, accidents and illnesses, for several years. When he did not have a legitimate problem he would feign a symptom to receive percodan or tussionex. On a few occasions he bartered goods for office calls. Some of the visits were at the office, where there was, at times, some sort of examination; some of the visits were at the hospital and usually involved no examination. Some of the prescriptions were written at defendant's home after weekly meetings. Again, the testimony is insufficient and not correlated to specific prescriptions.

Considering the prescriptions written in other names, the court does not attach particular significance to Lill's testimony that he told defendant (and assumed defendant believed him) that he was having trouble getting prescriptions filled in his own name and that pharmacies knew him by a different name. Even were this the reason for the prescriptions written in his father's name, it does not explain the prescriptions written in his mother's name. Of greater significance is the nature of Lill's requests and the number and frequency of these prescriptions. Under the circumstances, the court believes that the evidence is sufficient that a jury could infer the defendant acted with unlawful intent or knowledge in writing these prescriptions, and clear enough to support a reasonable inference that they issued as part of a plan or scheme of deception in which defendant was an active participant. *See United States v. Guerrero*, 650 F.2d at 737.

Finally, the court finds that the testimony of Dr. Young provides little in the way of an additional evidentiary basis for the introduction of the extrinsic prescriptions. Unable to review the patient records, he could not render an opinion as to whether defendant's treatment of any of the witnesses was appropriate or not. Nor could he render an opinion, in specific instances, as to whether a prescription frequency was outside the usual course of practice. The court has no other evidentiary basis for determining prescriptions relevant due to the rate of frequency or overall amounts. In this regard, those cases relied upon by the government which address prescriptions in the aggregate and admit them on the basis of their inordinate number are distinguishable from this case. *See United States v. Jackson*, 576 F.2d 46 (5th Cir. 1978); *United States v. Ellzey*, 527 F.2d 1306 (6th Cir.1976).

### Rule 403 Balancing Test

Once the relevance of the evidence is established, by determination of its probativeness of an issue other than propensity and by proof that defendant committed the extrinsic act, the court must then balance the probative value against the potential for undue prejudice. Federal Rule of Evidence 403. While this calls for

a common sense assessment of the circumstances surrounding the extrinsic evidence, *United States v. Beechum*, 582 F.2d at 914, several recognized factors aid in determining the probative value of the evidence. The court may consider the prosecution's need for the evidence, *Id.* at 914–15, and should consider the temporal remoteness of the extrinsic act evidence to the charged offense, *see, e.g., United States v. Dysart*, 705 F.2d at 1258, as well as the overall similarity of the evidence and the charged offense, *see, e.g., United States v. Guerrero*, 650 F.2d at 737. As to the latter consideration, the probative value of the evidence tends to correlate positively with its overall similarity to the charged offense. *United States v. Beechum*, 582 F.2d at 915.

In this context, and as to the alias prescriptions, the court concludes that the balance tips in favor of probativeness, and that this evidence is not substantially outweighed by its potential for unfair prejudice. After hearing a considerable amount of the evidence in this case, it is clear the questions of intent and knowledge will play a pivotal role, and that the issue of a continuing plan or scheme of deception is also of consequence. There is no problem of remoteness, and there is a substantial similarity in many respects between the extrinsic acts and the charged offenses. Moreover, the other considerations of Rule 403 do not warrant exclusion of the evidence.

■ Further, the court notes that even if, discounting problems of specificity, the collective nature of the evidence as to the other prescriptions were sufficient for the jury to find that defendant issued them outside the usual course of practice, the court would nevertheless find their value substantially outweighed by the danger of unfair prejudice. In view of the nature of the testimony, any inference that might be drawn from these prescriptions would be too attenuated to be of much probative value. *See United States v. Biswell*, 700 F.2d at 1319. Furthermore, given the approach of the government in this case, at some point other considerations of Rule 403, such as confusion of the issues, waste of time, and needless presentation of cumulative evidence, would also warrant the exclusion of other prescription evidence. It is well to bear in mind the observation of Weinstein in his treatise on Evidence:

> The legislative history of Rule 404 suggests that the policy of protecting the accused should be embraced in good faith by prosecutor and judge. Accordingly, the onus of showing that prejudice is over-balanced by need and good faith should rest on the Government. This may call for prosecutorial restraint. In *United States v. Williams*, [596 F.2d 44, 51 (2d Cir.), *cert. denied* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979)], the Second Circuit expressed concern "over the government's readiness to jeopardize a conviction by use of other crimes evidence when the question of admissibility, as here, is a close one."

2 Weinstein's Evidence, 404–112 (1981). *See also United States v. Biswell*, 700 F.2d at 1317–18 n. 5.

IT IS THEREFORE ORDERED that defendant's motion in limine to exclude prescription evidence is granted in part, and denied, in accordance with this opinion, as to prescriptions written in the names of individuals other than the recipients.