**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jerry GENTRY, Defendant-Appellant.**

**No. 80–1815.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 19, 1981.

Decided March 2, 1981.

---

Michael Lerner (Stephen G. Mirakian, Kansas City, Kan., with him on brief), of Barnett & Lerner, Kansas City, Kan., for defendant-appellant.

John O. Martin, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty. and Douglas B. Comer, Asst. U. S. Atty., Kansas City, Kan., on brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Jerry Gentry was convicted of conspiracy to possess with intent to distribute methamphetamine sulfate (MS) in violation of 21 U.S.C. § 846. Trial was to the court on stipulated facts.

The only issues on appeal concern the trial court's refusal to suppress certain evidence seized by agents of the Drug Enforcement Administration (DEA) under a search warrant, and whether conduct of the DEA agents was so outrageous as to violate Gentry's Fifth Amendment rights to due process.

Gentry and others were engaged in an ongoing, illegal business venture to manufacture and sell MS. In the course of this venture, Gentry purchased large quantities of phenyl-two-propanone (P2P), a precursor chemical used in the manufacture of MS, from the Buckeye Scientific Company. Employees of Buckeye, under an arrangement with DEA, furnished Gentry's name to local DEA agents. Thereafter, Gentry sold one gram of MS to Bobby Hunsinger, indicating he could provide larger quantities in the future. Hunsinger contacted DEA agents and agreed to act as an informant. Hunsinger introduced DEA Agent R. C. Gamble to Gentry as a potential purchaser of MS.

During the next few months, there were several contacts and conversations between Hunsinger or Gamble and Gentry involving sale of MS and regarding the acquisition of

P2P. Once Gamble furnished Gentry with a quantity of P2P. Also during this period Gentry ordered a quantity of P2P from "Precision Organic Chemical Company" or "Cash Counter Sales" a storefront operation owned by the DEA in Alsop, Illinois. When Gentry and another arrived to take delivery of the chemical, they sought and received technical advice from a DEA undercover agent acting as a salesman for the chemical company. Gentry purchased a new piece of laboratory equipment, a hydrogenator, which, he was told, would increase the yield of MS from the manufacturing process. DEA agents delivered to Gentry's residence the new equipment purchased from Precision Chemical. Shortly thereafter, Gamble contacted Gentry regarding delivery of MS previously requested by Gamble. Gentry advised that he had just returned from the "lab" and that the MS would be ready in a few days. Previous surveillance had established that Gentry frequently visited, and on this occasion had recently returned from, a building at 356 North 10th Street, Kansas City, Kansas.

The following day, Agent Gamble obtained a search warrant for the building, specifying MS as the object of the search. During the search, agents seized a quantity of MS, lab equipment, and documents relating to the laboratory equipment and the making of MS. At trial, the court denied Gentry's motion to suppress all the evidence seized but not specified in the warrant.

## I

In support of his contention that the suppression motion should have been granted, Gentry says the agent who secured the warrant was fully aware that such items were on the premises to be searched, and their discovery cannot be called inadvertent to fall within the "plain view" exception to warrantless seizures. See generally Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This argument fails because the lab equipment and the seized documents bear a reasonable relation to the item named in the warrant. When a logical nexus exists between seized but unnamed items and those items listed in the warrant, the unnamed items are admissible. Mesmer v. United States, 405 F.2d 316 (10th Cir. 1969). See also United States v. Jones, 543 F.2d 627 (8th Cir. 1976), cert. denied, 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977); Taylor v. Minnesota, 466 F.2d 1119 (8th Cir. 1972), cert. denied, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973).

Gentry argues that the documentary evidence seized from accomplice Zweimiller's briefcase is important because it helped prove the conspiracy alleged. Of course, there was significant other evidence linking Zweimiller to Gentry, including his presence at the laboratory during the search. The receipts and other documents found in the briefcase are within the "nexus" rule. In addition, however, they fall squarely within the plain view doctrine. Id. See also Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Ochs, 595 F.2d 1247 (2d Cir.), cert. denied, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). It is logical and reasonable that the drug, the object of the search, could be concealed in the briefcase situated on the premises. A search of the briefcase would normally be appropriate under the warrant's authority. There is no reason to treat the documents' discovery as other than inadvertent. The papers describing the manufacturing process for MS were notes taken, apparently in Illinois, by Gentry and Zweimiller during conversations with a DEA agent. The instructions for the hydrogenator were delivered with that equipment, but delivery was to an address different from the premises searched, and we do not think it was obvious they would be found in the laboratory. At no time did DEA agents view these items on the premises prior to the search.

## II

Gentry also contends that the criminal involvement of government agents in this investigation was so pervasive that dismissal of the indictment is required. See generally United States v. Twigg, 588 F.2d 373 (3d Cir. 1978). We disagree. While the involvement of the government during this investigation was substantial, it was not of the type found objectionable in Twigg. In

that case the illegal activity *began at government instigation.* Here Gentry and his colleagues were involved in an existing illegal drug manufacturing operation *prior to* the investigation and participation by government agents.

In *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), an ongoing illicit. drug manufacturing operation was infiltrated by government agents; the Supreme Court said "[i]t is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." 411 U.S. at 436, 93 S.Ct. at 1645. That case is dispositive here. In *Russell,* the government supplied P2P to an ongoing, illegal drug manufacturer and gave some aid in making MS. Noting the difficulty of obtaining evidence of, and convictions for, the illegal manufacture of drugs, the court approved the infiltration of drug rings by limited participation in their unlawful practices. 411 U.S. at 432, 93 S.Ct. at 1643. We see no basis for distinguishing the DEA's conduct in the instant case from that involved in *Russell.*

AFFIRMED.