**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joel SIMKO, Defendant-Appellant.**

**Nos. 80–1838, 81–1878.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted in No. 80–1838 July 14, 1981.

Argued and Submitted in No. 81–1878 Sept. 14, 1981.

Decided Oct. 8, 1981.

Rehearing Denied Nov. 4, 1981.

Certiorari Denied Jan. 18, 1982. See 102 S.Ct. 1264.

Stanley Kotovsky, Jr., Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., and Larry Gomez, Asst. U. S. Atty., on brief), for plaintiff-appellee.

R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N. M. (William W. Deaton, Federal Public Defender, Albuquerque, N. M., on memorandum in 81–1878), for defendant-appellant.

Before BARRETT and SEYMOUR, Circuit Judges, and BROWN,* District Judge.

BARRETT, Circuit Judge.

These are consolidated appeals. In No. 80–1838, appellant, Joel Simko, (Simko) seeks reversal of his conviction for manufacturing methamphetamine in violation of 21 U.S.C.A. § 841(a)(1). In No. 81–1878, Simko appeals the subsequent denial of his motion for new trial or dismissal.

* Honorable Wesley E. Brown, District Court Judge for the District of Kansas, sitting by designation.

On February 19, 1980, acting upon information received from agents of the Cincinnati, Ohio, office of the Drug Enforcement Administration, agents from the Albuquerque, New Mexico office of the DEA arrested Simko for possession of phenylacetone ($P_2P$), a Schedule II controlled substance. Simko had ordered the $P_2P$ from Buckeye Scientific, a chemical company in Columbus, Ohio, to be delivered via UPS to T. C. Cully, an assumed name, in Albuquerque, New Mexico. Simko was apprehended as he placed a box in his car at the UPS station. DEA agents had previously identified the box as the one from Buckeye Scientific containing $P_2P$ and they had observed Simko accepting delivery of the box.

Simko was advised of his rights and then transported to the DEA office where he again was advised of his Miranda rights. Simko signed a waiver of his Miranda warnings and gave the agents a statement concerning an illegal drug manufacturing scheme in which he and various other people were involved. DEA agents opened the box which was taken from Simko's car and discovered the $P_2P$. This evidence was excluded at trial due to the failure of the agents to obtain a search warrant.

Based upon information contained in Simko's statement, the agents obtained warrants for the search of a storage locker and Simko's residence. Search of the storage locker and residence led to the discovery of pills, glassware and other laboratory equipment with traces of methamphetamine on it.

On February 20, 1980, Simko appeared before the United States Magistrate where he was represented by counsel. Subsequent to this appearance, the federal public defender was appointed to represent him.

On February 25, 1980, Simko voluntarily went to the DEA office in Albuquerque. According to Simko's testimony, this visit was for the purpose of retrieving his car.

However, at this meeting, Simko gave the agents a second statement concerning his involvement in an existing plan to manufacture methamphetamine.

On March 6, 1980, a federal grand jury returned a two count indictment against Simko charging him with possession of $P_2P$ with intent to manufacture amphetamine and/or methamphetamine and with unlawfully, knowingly and intentionally manufacturing methamphetamine. The possession count was later dropped.

Prior to trial, Simko filed three motions to suppress and one motion to dismiss. After a hearing, the motion to suppress the box of $P_2P$ was granted. All other motions were denied. Trial was to the United States District Court for the District of New Mexico on stipulated facts, after which Simko was convicted.

Following his conviction, Simko moved for a new trial or dismissal, alleging that newly discovered evidence demonstrated that, *inter alia*: governmental misconduct occurred via DEA's operation of Buckeye Scientific Company; the court was misled relative to the government's actual role with Buckeye Scientific Company; the government withheld information which would have established its own misconduct in the operation of Buckeye Scientific Company. The denial of this motion is the genesis of Simko's appeal in No. 81–1878.

On appeal in No. 80–1838, Simko assigns as error the trial court's refusal: (1) to grant his motion to dismiss based on governmental misconduct amounting to a violation of his due process rights, (2) to suppress his first statement and the evidence obtained from the search of his residence and storage locker in that they were fruits of the illegal search of the box containing $P_2P$, (3) to suppress his second statement in that it was taken in violation of his Sixth Amendment right to counsel, and (4) to require disclosure of the identity of the government's confidential informant. Finally, Simko contends that the trial court wrongfully considered *in camera* material in deciding his motion to dismiss.

### I.

Simko asserts in No. 80–1838 that this case should have been dismissed because the government involvement was so outrageous as to violate notions of fundamental fairness of due process of law. He also contends in No. 81–1878 the court erroneously denied his motion for a new trial or dismissal predicated upon newly discovered evidence of governmental misconduct. We disagree.

The alleged governmental misconduct arose from the supplying of $P_2P$ to Simko in that either Buckeye Scientific was employed or closely connected with the DEA or the government had possession of the $P_2P$ and nevertheless allowed it to be handed over to Simko by UPS. The only testimony connecting Buckeye Scientific to the DEA was that Buckeye informed the DEA of the shipment of $P_2P$ leading to Simko's arrest and that Buckeye also informed the DEA concerning previous shipments of $P_2P$ to Simko under assumed names. DEA agent Robert Hastings testified that prior to Simko's arrest, he identified and photographed the box containing $P_2P$ and then returned it to UPS for delivery to Simko.

We fail to see the relevance of any connection between Buckeye Scientific and the government. Assuming, as we will, that the government supplied Simko with $P_2P$, such conduct does not, standing alone, amount to outrageous conduct in violation of Simko's rights to due process of law. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). In *United States v. Gentry*, 642 F.2d 385 (10th Cir. 1981) the issue was whether or not the conduct of government agents was so outrageous as to violate Gentry's due process rights. Gentry was involved in a plan to manufacture methamphetamine. He obtained $P_2P$ from Buckeye Scientific, who notified the DEA, and also purchased $P_2P$ from a chemical company which was admittedly run by the DEA. Gentry also sought and received technical advice and equipment from DEA

agents. The government activity involved in *Gentry* goes far beyond that involved in the instant case, yet we held:

> While the involvement of the government during this investigation was substantial, it was not of the type found objectionable in [*U. S. v.*] *Twigg* [588 F.2d 373]. In that case the illegal activity *began at government instigation.* Here Gentry and his colleagues were involved in an existing illegal drug manufacturing operation *prior to* the investigation and participation by government agents.

*United States v. Gentry, supra,* at 387–88. *See also: United States v. Wylie,* 625 F.2d 1371 (9th Cir. 1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

Simko, through his own voluntary statements, admitted that he had been manufacturing or attempting to manufacture methamphetamine for almost a year prior to his arrest and that he had obtained P$_2$P from other chemical companies. Simko placed the order for P$_2$P with Buckeye Scientific through his own volition and he did so prior to any contact with the DEA. Thus, he cannot claim that his illegal activity "began at government instigation".

■ Simko contends that since Buckeye Scientific was connected with the government and Buckeye advertised its product with a denial of involvement with the DEA, he was induced by the government to buy chemicals for manufacture of illegal drugs. In *United States v. Russell, supra,* 411 U.S. at 435–36, 93 S.Ct. at 1644–45, the Court said,

> *Sorrells* and *Sherman* both recognize "that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution," 287 U.S., [435] at 441 [53 S.Ct. 210 at 212, 77 L.Ed 413]; 356 U.S., [369] at 372 [78 S.Ct. 819 at 820, 2 L.Ed.2d 848]. Nor will the mere fact of deceit defeat a prosecution, see, *e. g., Lewis v. United States,* 385 U.S. 206, 208–209, 87 S.Ct. 424, 425–426, 17 L.Ed.2d 312 (1966).

■ Nor do we find any merit in Simko's contention that government knowledge of the drug becoming illegal after he ordered it but before he picked it up, constitutes outrageous conduct by permitting the shipment to proceed. In *Hampton v. United States, supra,* the government directly supplied the defendant with an illegal drug. Yet, the Supreme Court did not find "outrageous conduct". Thus, we find no error in the trial court's refusal to grant Simko's motion to dismiss.

In like manner, we see no merit in Simko's contention that we should reverse the trial court's denial of his motion for a new trial or dismissal predicated upon allegedly newly discovered evidence of governmental misconduct. Within this motion, Simko reiterated the alleged interrelationship of Buckeye Scientific Company, contending that such a working arrangement gave rise to outrageous governmental involvement in violation of his due process rights.

■ Assuming, *arguendo*, that Buckeye Scientific was merely an arm or conduit of the DEA, Simko's allegations of error are, nonetheless, without merit. In view of Simko's repeated admissions of his predisposition to engage in the manufacturing of methamphetamine, the actions of the government agents herein cannot be considered violative of his due process rights. In *Hampton v. United States, supra,* the Court opined:

> But in each case the Government agents were acting in concert with the defendant, and in each case either the jury found or the defendant conceded that he was predisposed to commit the crime for which he was convicted. The remedy of the criminal defendant with respect to the acts of Government agents, which, far from being resisted, are encouraged by him, lies solely in the defense of entrapment. But, as noted, petitioner's conceded predisposition rendered this defense unavailable to him.

To sustain petitioner's contention here would run directly contrary to our statement in *Russell* that *the defense of entrapment is not intended "to give the*

*federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve.* The execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations." 411 U.S., at 435 [93 S.Ct. at 1644].

\* \* \* \* \* \*

If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.

425 U.S. at pp. 489–490, 96 S.Ct. at pp. 1649–50. [Emphasis supplied].

No less a standard should be applied herein. We hold that the trial court did not err in denying Simko's motion for a new trial or dismissal.

## II.

The trial court's admission of statements made by Simko and evidence obtained from the search of his residence and storage locker was not error.

■ Viewing the evidence in the light most favorable to the government, we must accept the testimony of Agent Hastings that Simko was not shown the box of $P_2P$ that had been illegally searched. Thus, his first statement and the search warrants could not have been a product of that illegal search.

■ Simko's right to counsel was not violated when the second statement was taken. Simko initiated the meeting at which time this statement was taken. He was not in custody. Accordingly, it is not necessary to determine if he waived his rights. *Miranda* does not prohibit the admission of such statements. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

## III.

Simko also assigns as error the trial court's refusal to require disclosure of the identity of the government's confidential informant. He contends that disclosure is necessary under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), because the informant may help to establish a connection between Buckeye Scientific and the DEA. As previously noted, such a connection is irrelevant. Thus, the trial court's refusal to require disclosure was proper.

## IV.

Simko's final assignment of error is that the trial court wrongfully considered *in camera* material in deciding the motion to dismiss. The contention is without merit.

The record discloses that the discussion concerning *in camera* material centered around a motion for production of documents for the purposes of cross-examination which occurred during the course of a hearing on a motion to suppress. The trial court indicated that it would consider the *in camera* material on the merits of this motion. Later discussion of the *in camera* material also appears to be centered around a motion to suppress and whether or not there was probable cause to arrest. The trial court indicated that the *in camera* material would not be used on the merits of that motion. Nowhere in the record does it appear that the trial court considered *in camera* material on the merits of the motion to dismiss. Accordingly, Simko's contention is without merit.

WE AFFIRM.