**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARIANO BEDOLLA,

Defendant-Appellant.

No. 06-3225
(D.C. No. 04-CR-40001-SAC)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **McKAY**, and **GORSUCH**, Circuit Judges.

Defendant Mariano Bedolla is serving a 235-month prison sentence after being found guilty of four drug-related offenses, including possession and conspiracy to distribute methamphetamine. He challenges his convictions on appeal, arguing that the district court erred in denying his pre-trial motion to suppress evidence seized in violation of his Fourth Amendment rights. He claims

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that one of the search warrants lacked probable cause and that police officers went beyond the scope of the warrant. Because we conclude that the police executed the challenged search warrant in good faith under *United States v. Leon*, 468 U.S. 897 (1984), we exercise our jurisdiction under 28 U.S.C. § 1291 to AFFIRM.

## I. Factual Background

*A. First Search Warrant*

On January 8, 2004, Special Agent Brian Carroll of the Kansas Bureau of Investigation applied for a search warrant to search the defendant's home at 10782 Kettle Way in Dodge City, Kansas for paraphernalia used in the packaging and distribution of methamphetamine. In support of his request, SA Carroll submitted a sworn affidavit that primarily detailed the drug trafficking activities of defendant's brother, Felipe Bedolla, but included several allegations linking defendant to those activities.

The affidavit states that on December 4, 2003, a cooperating individual ("CI") who sold methamphetamine for Felipe[1] told officers of the Emporia Police Department ("EPD") that Felipe was in Emporia to collect money for previous sales of methamphetamine and that he was staying at local motel. Based on that tip, EPD officers found Felipe's car at a motel and witnessed Felipe and a man

_____

[1]     We will refer to Felipe Bedolla by his first name so as not to confuse him with the defendant.

-2-

later determined to be defendant get into the car and drive to the CI's home, where the CI paid money to Felipe. The police then followed Felipe and defendant to a bank where Felipe made a deposit. A week later, on December 11, 2003, the police intercepted a phone call between Felipe and the CI in which Felipe told the CI that he was on his way to Emporia to deliver more methamphetamine. Over the course of the next two days, an undercover agent accompanied the CI to his meetings with Felipe and witnessed the two exchanging money and methamphetamine.

The affidavit continues that on January 5, 2004, defendant was arrested along with Felipe, Juan Carlos Verducco-Camarena, and others on drug charges relating to an ongoing narcotics investigation. The affidavit states that at the time of their arrest, the Bedolla brothers had been in Emporia for two days trying to collect money from the CI. When defendant was booked into the county jail, he listed 10782 Kettle Way as his permanent address. The affidavit goes on to describe a January 6, 2004, police interview of someone whose name has been redacted. We cannot tell from the record or the parties' briefs whether this unknown person is Verducco-Camarena or the CI or, indeed, whether they are one and the same. In any event, this person told the officers conducting the interview that he had been selling methamphetamine for Felipe in the Emporia area for 8 or 9 months. He said that Felipe traveled from Dodge City to Emporia every Sunday to collect money and deliver methamphetamine and that sometimes defendant

accompanied Felipe on these trips. This same person also described the location of what he believed to be Felipe's home in Dodge City, which one of the officers familiar with the area recognized as 10782 Kettle Way. The person also told the officers that Felipe told him that defendant assisted Felipe in cutting the methamphetamine. He further "advised that the [cutting] took place in the basement of Felipe's home on Kettle Way." R. doc. 27 at A4.[2]

Based on this information a magistrate judge issued a warrant at 4:00 p.m. on January 8, 2004, authorizing a document search of the Kettle Way residence. It specifically identified the following items to be searched for and seized:

> Documents, recipes, notes, books, and pamphlets, evidence of ownership, control and occupancy of the property . . . records of drug sales distribution and production, activities and confederates . . . records of drug proceeds and/or the proceeds themselves . . . weapons.

*Id.* at A6. According to the warrant return, dated January 9, 2004, the search was executed at 5:14 p.m. on January 8 and completed at 11:00 p.m. In addition to documents and drug paraphernalia, officers found methamphetamine, which is listed as seized property in the warrant return.

---

[2]    The parties vigorously dispute whether the person referenced in SA Carroll's affidavit personally observed defendant cutting the methamphetamine or whether this information is hearsay obtained from Felipe. It is not relevant to our disposition, however, because, as we explain below, we can affirm the district court's ruling without deciding whether SA Carroll's affidavit was sufficient to establish probable cause.

*B. Second Search Warrant*

After methamphetamine was found in the defendant's home, SA Carroll prepared another affidavit, also dated January 8, 2004, specifically requesting a warrant to search the Kettle Way residence for "[methamphetamine], drug use paraphernalia and other illegal drugs." *Id.* at A13. A second warrant issued at 8:12 p.m. on January 8, 2004, apparently while the initial search of defendant's home was ongoing, and identified methamphetamine among the items that could be seized. The return for this second warrant, dated January 9, 2004, makes clear that the two warrants were executed simultaneously. It states that the search pursuant to the second warrant was executed on January 8, 2004, at 8:20 p.m. and was completed at 11:00 p.m. Moreover, the description of the methamphetamine found in defendant's home is identical in both the first and second warrant returns.

*C. Motion to Suppress*

On April 5, 2004, defendant filed a motion to suppress the methamphetamine seized from his home, raising the following arguments: (1) he argued that SA Carroll's first affidavit lacked information concerning the credibility and reliability of the CI and specifically lacked independent corroboration of the CI's statement that he assisted Felipe in cutting methamphetamine; (2) he argued the first search warrant was based on stale information; (3) he accused SA Carroll of submitting an affidavit that contained

erroneous and tainted information designed to mislead the issuing judge; (4) he claimed the seizure of methamphetamine from his home exceeded the scope of the first warrant; and (5) he argued the *Leon* good-faith exception did not apply because the issuing judge was deliberately misled, the warrant lacked specificity, and SA Carroll's affidavit lacked any indicia of probable cause.

Although the district court rejected each of the above arguments, defendant asserts error only with respect to the first and fourth. The court rejected his first argument, explaining that not every piece of information obtained from an informant requires independent verification. It went on to note that many of the CI's statements in this case were independently verified, including his statement that Felipe was in Emporia on December 4, 2003, and could be found at a local motel. The court concluded that the information provided by SA Carroll "enabled the magistrate to judge the validity of the informant's information, and showed some independent verification of the information given officers by the CI." R. doc. 103 at 10.

The court also rejected defendant's argument that the executing officers exceeded the scope of the first warrant by seizing methamphetamine, concluding that there was a logical nexus between the drugs and the terms of the first warrant. *See United States v. Gentry*, 642 F.2d 385, 387 (10th Cir. 1981) (holding that items are admissible "[w]hen a logical nexus exists between seized but unnamed items and those items listed in the warrant"). It also held that under the

"practical accuracy" standard applicable to search warrants, *United States v. Ortega-Jiminez*, 232 F.3d 1325, 1328 (10th Cir. 2000) (quotation omitted), the first search warrant could be read to include drugs among the items that could be seized if found. And in any event, the court concluded that defendant failed to show that the officers had actually seized, as opposed to simply secured, the methamphetamine during the first search. Finally, the court held that even if the first warrant lacked probable cause, the first search was nonetheless valid under *Leon*, stating that it had "reviewed the four exceptions to *Leon's* applicability, and [found] them inapplicable." R. doc. 103 at 19.

As we already mentioned, the defendant does not appeal all of the district court's rulings. He challenges only the court's determination that the first warrant was supported by probable cause and its finding of a logical nexus between the first warrant and the drugs seized. Specifically, he argues that SA Carroll's first affidavit contained no information about the credibility and reliability of the CI, nor any independent verification of the CI's statements, including his statement regarding defendant's involvement in cutting methamphetamine.

## II. Discussion

"In reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the government and upholds the district court's factual findings unless clearly erroneous." *United States v. Danhauer*,

229 F.3d 1002, 1005 (10th Cir. 2000). We review the district court's conclusions

of law de novo, including its determinations relating to sufficiency of a warrant

and whether the *Leon* good-faith exception should apply. *Id.*

Not all cases require us to resolve the Fourth Amendment question of

whether a particular warrant was supported by probable cause. In some cases,

resolution of the Fourth Amendment question is "necessary to guide future action

by law enforcement officers and magistrates." *Id.* (quotation omitted). In more

routine cases, however, those that pose no important Fourth Amendment

questions, we have discretion to proceed directly to the *Leon* good-faith analysis.

*See Leon*, 468 U.S. at 925 (holding that reviewing courts have discretion to turn

directly to the good-faith issue). We conclude this case falls in the latter

category. As such, we need not decide whether SA Carroll's first affidavit

contained sufficient facts to lead the magistrate to believe that a search of the

defendant's home would uncover evidence of criminal activity. *See Danhauer*,

229 F.3d at 1006. Likewise, our disposition does not depend on whether the CI's

veracity and basis of knowledge were sufficiently verified.

In *Leon*, the Court explained that

[i]f the purpose of the exclusionary rule is to deter unlawful police
conduct, then evidence obtained from a search should be suppressed
only if it can be said that the law enforcement officer had knowledge,
or may properly be charged with knowledge, that the search was
unconstitutional under the Fourth Amendment.

468 U.S. at 919 (quotation omitted). The Court therefore created an exception to the exclusionary rule for evidence obtained pursuant to an unlawful search if the officers executed the search with objective good faith, relying on a search warrant issued by a neutral judge or magistrate. *See id.* at 919-21. In determining whether to apply the exception, our inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. The *Leon* Court recognized four circumstances in which the exception would not apply because the officer would "have no reasonable grounds for believing that the warrant was properly issued." 468 U.S. at 923.

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth. Second, the exception does not apply when the issuing magistrate wholly abandoned his judicial role. Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Danhauer*, 229 F.3d at 1007 (quotations and alterations omitted).

Although defendant does not directly challenge the district court's good-faith determination, his arguments attacking the reliability of the informant

implicate the third exception recognized in *Leon*.[3]  We conclude, however, that

SA Carroll's affidavit was not so lacking in indicia of probable cause as to

convince a reasonably well-trained officer that the search was illegal.  *See*

*Danhauer*, 229 F.3d at 1007.  We have previously explained that "the absence of

information establishing the informant's reliability or basis of knowledge does not

necessarily preclude an officer from manifesting a reasonable belief that the

warrant was properly issued, particularly when the officer takes steps to

investigate the informant's allegation."  *Id.*  (citation omitted).  Furthermore, an

officer is not required to corroborate information provided by an informant

through personal observation.  *See United States v. Mathis*, 357 F.3d 1200, 1204

(10th Cir. 2004).  It is enough if the officer simply has "knowledge of other

matters that reasonably corroborate the informant's statements."  *Id.*  Finally, we

have held that good faith can be established so long as a minimal nexus exists

between the place to be searched and the suspected criminal activity.  *See United*

*States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005).

SA Carroll's affidavit supplied sufficient information to justify his reliance

on the informant's statements concerning defendant's involvement in Felipe's

drug trafficking.  Certainly, there was sufficient independent evidence that Felipe

---

[3]  Defendant raised some arguments in the district court bearing on the first
exception, but he abandoned and thus waived those arguments on appeal.
Likewise, his appellate brief lacks any arguments relating to the second and
fourth exceptions recognized in *Leon*.

himself was engaged in the trafficking of methamphetamine. The affidavit described an intercepted phone call between the informant and Felipe in which the two discussed a drug deal, and an undercover agent witnessed Felipe and the informant exchanging methamphetamine for cash. There was also independent verification that defendant was at least minimally involved in some of Felipe's drug trafficking. The police witnessed him accompanying Felipe on at least one drug transaction, after which the two went to a bank to deposit money. And of course, the informant stated that defendant assisted Felipe in cutting methamphetamine. Defendant's residence on Kettle Way is tied to these transactions. The informant stated that he believed Felipe also lived in the house and used it to prepare the methamphetamine. We therefore conclude that SA Carroll, who both obtained and participated in the execution of the warrant, reasonably believed the fruits of his investigation into the informant's allegations sufficiently linked defendant to Felipe's criminal activities and the Kettle Way residence.

We further conclude that officers acted in good faith in seizing methamphetamine despite the limited scope of the first warrant. The seized drugs unquestionably bore a reasonable relation to the drug paraphernalia listed in the warrant and there was therefore a logical nexus between the two, which justified the seizure. *See Gentry*, 642 F.2d at 387. Moreover, it is far from clear from the record that the drugs were actually seized pursuant to the first warrant and not the

second.  Upon finding the drugs, SA Carroll applied for another warrant, which appears to have been issued before the first search was even completed.  It confuses matters that the warrant returns for both searches contain identical descriptions of the seized drugs.  We nonetheless conclude based on the totality of the circumstances, including the timeliness of the second warrant, that *Leon's* good faith exception applies to the officers' seizure of the methamphetamine.  As a result, the district court did not err in denying defendant's motion to suppress.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge